Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| HOSPITAL ESPAÑOL AUXILIO MUTUO DE PUERTO RICO<br><br>Peticionario<br><br>v.<br><br>INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACER WORKERS (IAMAW) AFL-CIO<br><br>Recurridas | KLCE202400811 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número: SJ2021CV03733<br><br>Sobre:<br>Laudo del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos emitido por el Árbitro Jorge L. Torres Plaza, Caso Núm. A-19-780 |

Panel integrado por su presidenta, la jueza Ortiz Flores, la jueza Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Jueza Ponente

# RESOLUCIÓN

En San Juan, Puerto Rico, a 13 de septiembre de 2024.

Comparece la parte peticionaria, Hospital Español Auxilio Mutuo de Puerto Rico, y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 21 de junio de 2024, notificada el 24 del mismo mes y año. Mediante dicho dictamen, el foro primario declaró No Ha Lugar la solicitud de revisión incoada por la parte peticionaria. En consecuencia, confirmó el *Laudo de Arbitraje* impugnado por la parte peticionaria.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto solicitado. Veamos.

I

El 16 de junio de 2021, el Hospital Español Auxilio Mutuo de Puerto Rico (Hospital o peticionario) instó una *Petición de Impugnación de Laudo de Arbitraje* ante el Tribunal de Primera

Instancia.[1] Indicó que, el 1 de julio de 2021, luego de celebrada una vista de arbitraje en el Negociado de Conciliación y Arbitraje (Negociado), un árbitro emitió un *Laudo de Arbitraje* mediante el cual resolvió que el despido de Blanca Calcaño, enfermera práctica en el Hospital (exempleada), fue injustificado. Arguyó que dicha determinación se realizó sin que el árbitro estableciera en el dictamen la prueba presentada en la vista, si alguna, según requerido por el Reglamento del Negociado, en contravención a lo dispuesto en el *Convenio Colectivo* suscrito entre las partes.

Por otro lado, el Hospital señaló en su petitorio que la vista de arbitraje fue pautada para el 24 de mayo de 2021, pero que, a las 8:42 a.m. de ese día, se le remitió una carta al árbitro en la cual se informaba que la testigo principal en el caso no podía asistir porque tenía COVID. Especificó que advino en conocimiento de ello el 23 de mayo de 2021 y que, ese mismo día, su representación legal se comunicó vía telefónica con el presidente de la International Association of Machinists and Aerospace Workers, AFL-CIO (Unión o recurrida) para informar lo anterior. No obstante, adujo que el árbitro procedió a celebrar la vista sin tomar en consideración la referida misiva. Planteó que en el *Laudo de Arbitraje* el árbitro indicó que el Hospital no compareció ni llamó para excusarse, lo cual era incorrecto, y concluyó que este deliberadamente no compareció a la audiencia, contrario a la prueba que tuvo ante sí. En virtud de ello, solicitó que se revocara el *Laudo de Arbitraje* por ser contrario a derecho y, en su consecuencia, se ordenara la continuación de los procedimientos en el foro arbitral.

Por su parte, el 18 de noviembre de 2021, la Unión se opuso.[2] Alegó que, de la prueba presentada por el Hospital, surgía que no fue hasta las 8:43 a.m., después de la hora en que estaba pautado

---

[1] Apéndice del recurso, págs. 1-15.
[2] Íd., págs. 188-199.

el comienzo de la vista (8:30 a.m.), que se envió al árbitro y al Negociado por correo electrónico una carta solicitando la suspensión de la misma, que dicho correo no fue abierto por el Negociado hasta la tarde y que la secretaria de la representación legal del Hospital no habló con el árbitro hasta después de celebrada la vista ex parte. Expuso que, según surgía del dictamen impugnado, cuando comenzó la vista solo estaba presente la Unión y, habiendo sido el sexto señalamiento del caso, el árbitro procedió a aplicar el Artículo XII (d) del Reglamento del Negociado, el cual regula lo que puede hacer dicho funcionario ante las incomparecencias. Detalló que el precitado articulado dispone expresamente que, si una de las partes, o ambas, no comparecen a la vista luego de haber sido notificadas por el árbitro, y sin haber solicitado u obtenido el aval para el aplazamiento o suspensión de la vista, el árbitro podría: (1) proceder al cierre del caso con perjuicio si la incomparecencia es de la parte promovente; o, (2) si la parte contraria es la que no comparece, podría proceder con la celebración de la vista y emitir su decisión solo a base de la prueba presentada por la parte promovente, acorde a lo dispuesto en el Articulo X (i) del mencionado Reglamento.

De otro lado, la Unión planteó que, concluir que un árbitro del Negociado no tenía la facultad para celebrar una vista sin la comparecencia de un parte, en un caso en donde podía comparecer el representante legal de la misma y no lo hizo –sin justificación alguna–, y sin haber solicitado la suspensión de la vista antes de la hora del señalamiento, estaría infringiendo las facultades del árbitro. Asimismo, adujo que, al proceder de esa forma, se le concedería a las partes y a su representación legal la potestad de no asistir a una vista, aunque no haya sido suspendida por el funcionario facultado para ello. Destacó que lo anterior derrotaría uno de los propósitos del arbitraje, que es atender los casos con rapidez y justicia. Por consiguiente, sostuvo que no procedía la

revisión del *Laudo de Arbitraje*, toda vez que el árbitro no erró al celebrar la vista, sino que actuó dentro del marco de sus facultades, y su determinación era final y obligatoria para las partes.

Luego de varias incidencias procesales, el 21 de junio de 2024, notificada el 24 del mismo mes y año, el Tribunal de Primera Instancia emitió la *Sentencia* que nos ocupa, mediante la cual declaró No Ha Lugar la solicitud de revisión incoada por el Hospital y, en su consecuencia, confirmó el *Laudo de Arbitraje* impugnado.[3] El foro primario expresó que, de la determinación recurrida se desprendía que, el Hospital –como patrono– no pudo probar lo imputado en la querella y que, ante la incomparecencia de este a la vista de arbitraje, lo que procedía era adjudicar la controversia a favor de la exempleada. Explicó que, en los casos de acciones disciplinarias, es al patrono a quien le corresponde probar el caso, y que la sanción aplicada a una persona empleada se presume injustificada hasta que se demuestre que medió justa causa para su imposición.

Sobre los planteamientos del Hospital, de que se le notificó al presidente de la Unión el día antes de la vista y al árbitro el mismo día, a través de un correo electrónico diez (10) minutos más tarde de la hora pautada para comenzar la vista, el foro *a quo* concluyó que no era justa causa ni denotaba la diligencia necesaria, tomando en consideración que era el sexto señalamiento. Describió que, del *Laudo de Arbitraje* impugnado surgía que, a la hora de iniciar los procedimientos, es decir, a las 8:30 a.m., el Hospital no se había excusado por su incomparecencia. Señaló que, tomando en consideración la naturaleza de las controversias y que la querella a ventilarse era del año 2018, el árbitro determinó ver la vista ex parte; ello, dentro de su facultad y discreción, conforme al Reglamento del

---

[3] Apéndice del recurso, págs. 220-225.

Negociado. Puntualizó que, en ausencia de fraude, conducta impropia, falta del debido procedimiento, violación de la política pública, falta de jurisdicción o dejar de resolver las cuestiones sujetas a controversia, no tenía autoridad para anular un laudo por diferencias de criterio, ya fueron estos en cuanto a la ley o en cuanto a los hechos. En virtud de lo anterior, el foro sentenciador resolvió que la determinación impugnada cumplía con las normas jurisprudenciales vigentes, por lo que la consideró correcta.

Inconforme, el 23 de julio de 2024, la parte peticionaria compareció ante nos mediante el presente recurso y esbozó el siguiente señalamiento de error:

> Erró el TPI al confirmar el Laudo, al determinar, bajo los mismos fundamentos esgrimidos por el árbitro, que dicho funcionario actuó correctamente al celebrar la vista sin la comparecencia del Hospital cuando existían razones válidas, extraordinarias y suficientes para suspender dicha audiencia y recalendarizarla para otra fecha, incurriendo así ambos [f]oros en un claro abuso de discreción que infringió el [d]ebido [p]roceso de [l]ey del Hospital.

En cumplimiento con nuestra *Resolución* del 15 de agosto de 2024, la parte recurrida compareció mediante *Oposición a Expedición de Certiorari* el 26 del mismo mes y año.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A**

El *ertiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). Ahora bien, tal discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a

considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *BPPR v. SLG Gómez-López*, 2023 TSPR 145, 213 DPR ___ (2023); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *ertiorari* o de una orden de mostrar causa:
>
> (G)   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B)   Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> €   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D)   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> €   Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F)   Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G)   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio".

*Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". Zorniak Air Servs. V. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**B**

En nuestro ordenamiento jurídico, las relaciones obrero-patronales, la negociación colectiva y los procedimientos de arbitraje están vinculados al desarrollo económico, a la paz industrial y, por ende, a la consecución de los intereses públicos. *C.O.P.R. v. S.P.U.*, 181 DPR 299, 319 (2011). Específicamente, el arbitraje está considerado como un método alterno a la intervención judicial para la solución de conflictos. *Íd.*, pág. 362. Cónsono con lo anterior, en Puerto Rico existe una vigorosa política pública a favor del arbitraje obrero-patronal. Así, pues, se entiende que el arbitraje es el medio menos técnico, más flexible, menos oneroso y, por tanto, más apropiado para la resolución de las controversias que emanan de la relación laboral. *Martínez Rodríguez v. A.E.E.*, 133 DPR 986 (1993).

Ahora bien, el arbitraje es un procedimiento de poderes delegados y mediante el convenio colectivo se le confiere la autoridad al árbitro para que evalúe y resuelva las controversias que allí se especifican. A. Acevedo Colom, *Legislación protectora del trabajo comentada*, 8va ed. Rev., Puerto Rico, Ed. Ramallo Printing Bros.,

2005, pág. 393. Referente al proceso de arbitraje, el laudo representa la determinación que toma el árbitro respecto a la controversia laboral. *C.O.P.R. v. S.P.U.*, supra, pág. 368. Se ha establecido que el laudo de arbitraje no es ni un contrato ni una sentencia, pero disfruta de la naturaleza de ambos. *Íd.*, pág. 328.

Con relación a la revisión judicial de los procesos de arbitraje, nuestro más Alto Foro ha expresado que, aunque la intervención no esté vedada, ante un convenio de arbitraje lo más prudente es la abstención judicial. *U.C.P.R. v. Triangle Engineering Corp.*, 136 DPR 133 (1994). Por ello, cuando se acuerda el uso del arbitraje como mecanismo para ajustar las controversias, se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece gran deferencia. *J.R.T. v. Junta Adm. Muelle Mun. De Ponce*, 122 DPR 318 (1988); *López v. Destilería Serrallés*, 90 DPR 245 (1964). Por tal razón, la revisión de los laudos de arbitraje se circunscribe al determinar: (1) la existencia de fraude; (2) conducta impropia; (3) falta del debido proceso de ley; (4) violación a la política pública; (5) falta de jurisdicción; o (6) que el laudo no resuelve todos los asuntos en controversia. *C.O.P.R. v. S.P.U.*, supra, pág. 319.

No obstante, si las partes pactan que el laudo arbitral sea conforme a derecho, los tribunales podrán corregir errores jurídicos en atención al derecho aplicable. Ello significa que el árbitro no puede ignorar o dejar pasar por desapercibidas las normas interpretativas, en el campo laboral, de derecho sustantivo emitidas por la Corte Suprema de los Estados Unidos y por el Tribunal Supremo de Puerto Rico. *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 DPR 62, 68 (1987).

De igual modo, las decisiones de los tribunales de primera instancia, de las agencias administrativas y los laudos arbitrales se reputarán persuasivas. *J.R.T. v. Hato Rey Psychiatric Hosp.*, supra. En tal supuesto, la revisión judicial de los laudos de arbitraje es

análoga a la revisión judicial de las decisiones administrativas. *Condado Plaza v. Asoc. Emp. Casinos P.R.*, 149 DPR 347 (1999); *Rivera v. Dir. Adm. Trib.*, 144 DPR 808, 821-822 (1998); *U.C.P.R. v. Triangle Engineering Corp.*, supra. Sin embargo, nuestro Tribunal Supremo ha aclarado que la intervención judicial no se justifica por una mera discrepancia de criterio con el árbitro, ya que se destruiría la esencia de los procesos de arbitraje. *UGT v. Hima San Pablo Caguas*, 202 DPR 917, 929 (2019). Por lo tanto, es la norma que los foros judiciales apelativos tendrán la autoridad para revisar todas las cuestiones de derecho sustantivo resueltas por el árbitro para poder determinar si son correctas. *C.O.P.R. v. S.P.U.*, supra, pág. 370. Es decir, procede la anulación del laudo solo si no se ha resuelto la controversia conforme a derecho. *Íd.*

Esbozada la norma jurídica, procedemos a aplicarla al recurso antes nos.

**III**

Como único señalamiento de error, la parte peticionaria sostiene que el Tribunal de Primera Instancia incidió al confirmar el *Laudo de Arbitraje* impugnado, bajo los mismos fundamentos esgrimidos por el árbitro. Apoya lo anterior en que el foro primario erró al concluir que dicho funcionario actuó correctamente al celebrar la vista sin la comparecencia del Hospital, cuando existían razones válidas, extraordinarias y suficientes para suspender dicha audiencia y recalendarizarla. A su vez, plantea que ambos foros incurrieron en un claro abuso de discreción que infringió el debido proceso de ley.

Luego de un examen sosegado del expediente ante nos, colegimos que no existe criterio jurídico que amerite nuestra intervención con lo resuelto por el Tribunal de Primera Instancia. Al entender sobre los planteamientos que la parte peticionaria propone ante este Foro, concluimos que la sala de origen no incurrió en error

de derecho ni en abuso de discreción al declarar No Ha Lugar la solicitud de revisión promovida por la parte peticionaria y confirmar el laudo en cuestión, ello a fin de que podamos soslayar la norma de abstención judicial que, en dictámenes como el de autos, regula el ejercicio de nuestras funciones.

Al evaluar los documentos que obran en autos, y en ausencia de prueba que nos permita resolver en contrario, denegamos expedir el auto de *ertiorari* que nos ocupa, al amparo de lo dispuesto en la Regla 40 de nuestro Reglamento, *supra.*

**IV**

Por los fundamentos que anteceden, denegamos la expedición del recurso de *ertiorari* solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones